Next, we have Inre Akhlaghpour, David Svani, appearing for Appellants, Christian Kim, appearing for Appli. Okay, two things before we get going. Mr. Samani, do you want to reserve a little time for rebuttal? Yes, please. I would like to reserve two minutes. Two minutes, okay. Let me begin this way, and this is a little bit unusual. But I don't know when we've seen an appeal where the panel had as many questions about the way the two of you seem to be conceiving of this. Let me ask a fundamental question to each side, okay? From Mr. Samani's standpoint, if everybody seems to agree, and by everybody I mean the probably even your side, that at least from and after the appointment of the trustee, the Barton Doctrine is simply not applicable. What are we arguing about with respect to that? And with respect to Mr. Kim, having chosen to go to the state court initially, and having gotten some rulings from the California Court of Appeal that broke out in a way that you did not in the first instance, three different relevant time periods here, and having the Court of Appeal made what looks like a determination, but you can certainly tell us that it was something else, with respect to the pre-petition period, and why the Barton Doctrine should cover that. What is the effect of Judge Kaufman apparently looking at that issue a little bit differently, and apparently agreeing that the Barton Doctrine didn't apply to that period? That seems a little inconsistent with what the California Court of Appeal did. Now neither one of you seem to have addressed these issues in your briefs, and you can argue anything you want, and we'll decide the issues that you present to us, but we're left with something here that is a little bit off from our perspective. So on the theory that may help you with the presentations, Mr. Simoni, you go ahead. Thank you, your honors. I think I'll start trying to address that question. Certainly it is appellate's recognition that the Court of Appeal did find that what is at issue partially in the state court action are matters that are not subject to the Barton Doctrine. Post that decision, what we dealt with was a motion seeking approval, a Barton motion, and certainly my position is not that the California Court of Appeal was wrong, but what concerns appellants here is there has been an attempt to obtain Barton approval, in our view retroactively, as to that activity that the Court of Appeal has already concluded is subject to the Barton Doctrine, and which required Barton approval prior to filing. So the concern... Well, to the extent that the font of all that is a lack of subject matter jurisdiction, how would that apply here if everybody seems to agree the Barton Doctrine has nothing to do with the post-petition period, right? So it's not as if the California Spirit Court or the Court of Appeal, quote, lacked jurisdiction. Of course they didn't, right, on the unique facts of this case. So help us out with that point, okay? Certainly, Your Honor, and I have not been able to find any decisional authority that deals with this sort of instance where, as I would interpret it, you have some allegations of negligence and malpractice, wrongdoing, for which Barton approval was necessary and for which I would then interpret that to mean that the state court didn't have jurisdiction to entertain those claims versus claims that could have been filed and I think can still proceed irrespective of... which did not require Barton approval. So in that respect, my view is that part of the claims that are before the Court of Appeal, there was no jurisdiction for. I don't think it rendered the entire lawsuit void for lack of jurisdiction. I think part of those claims could have been and can proceed. The concern that we have is now there is an order that's retroactively granting approval under Barton as to potentially all of those claims, some of which my reading would be have already been dismissed by the Court of Appeal in its opinion, saying that... But let me just stop you. You raise none of that in your papers, okay? The two points you made in your papers are retroactively and standing, right? So what do we do? I mean, I don't have an argument in front of me from your papers that addresses this question of what the Court of Appeal did. What do I do? So, and I guess that's partially governed, I suppose, by my view that what we are dealing with here is our view that the Court has retroactively approved that portion of the claim that the Court of Appeal had found needed Barton approval, and that that order should be reversed because that order was an error on the grounds that you cannot obtain retroactive approval. But when you say that order, let's talk with a little more precision, because as Judge and the post-trustee, and what I hear him say is that you're not really arguing about that. So really, all that you are focused at is the pre-petition representation and the claims for negligence and malpractice. That's really what we're talking about, correct? That's correct, Your Honor. All right. So the question for us that Mr. Kim is going to have to address is what is the effect of the Court of Appeal's decision that those periods, pre- and post-prior to the appointment of the Chapter 11 trustee, are all really one period that that cannot be reversed by the bankruptcy court? Whether she called it out as a separate period or not, and granted Barton approval, how do we Mr. Kim, this isn't your turn, but think about that and be prepared to address it. And I guess, Mr. Somani, if in fact the bankruptcy court couldn't grant Barton approval for a period that was already encompassed within an approved fee application, and or the Court of Appeal said was one period and was subject to dismissal, and that wasn't appealed, then what are we arguing about from your perspective? Well, from my perspective, what concerned my clients is we have a ruling, and then we have a bankruptcy court order that appears to grant Barton approval for a period of time that we would have otherwise understood has already been dismissed, and legally our concern is that the basis, for that ruling under the retroactivity argument that we've advanced in our interpretation of the authorities, and so... Can I interrupt? This is an important point, too. What do you think should happen then? You think that the post continues, the pre is disallowed, that means... But Judge Coffin was certainly of the opinion that it should go forward. The malpractice action as to the pre should go forward, and was willing to do that, allow that under Barton. So really what you're asking is dismiss the pre-petition malpractice claim in the pending action and dot, dot, dot, allow the debtor to refile in a new action which will then be asserted to be time barred and possibly joined or moved to amend? What is the significance of this? Well, my position would be, Your Honor, that it's inappropriate for it to have been retroactively granted, which would mean... I mean, all right, you're right. Okay, great. But Judge Coffin obviously said, Barton is not going to be an impediment of this. And in fact, there is no bankruptcy case for that existing malpractice claim to be brought in the bankruptcy case. It does not disappear. It is not adjudicated. It must now be adjudicated in the state court proceeding. So the only question really is how and what procedural mechanism is going to be used to bring that for adjudication, whether it's in the existing claim, an existing lawsuit, or whether it needs to be now amended into that claim, raising timeliness issues, or whether you are going to require a new action which would likely be jointly administered with the pending one, but subject to a timeliness statute of limitations defense, I assume. Isn't that the reality here? Well, I think that's true, Your Honor, because I think you couldn't have done it the way it's been done. I don't think you could have collectively... Why? Because I do not think having not sought Barton approval for those claims that were subject to Barton approval at the... But there are no claims. According to the Court of Appeals, there are no claims that are pending in the state court that are subject to Barton approval because their only claims that are existing are the post-appointment claims, which you agree Barton approval wasn't required for. So there's no reason to dismiss. There's no reason to reverse with regard to the post-petition, which are the only existing claims as far as we can determine that the Court of Appeals is allowing to go forward. That would have... I mean, I agree that that was my reading of what the Court of Appeal held. The concern I had is why this Barton motion was then filed and what the purpose of it is. My concern is with this order at hand, there is now going to be a situation where claims that, in my view, could not proceed as part of a pre-existing lawsuit that was already on file prior to the Barton motion being filed may now be sort of backdoored into an existing lawsuit. As Judge Brekker said... You keep saying backdoored, but the claims exist. Barton does nothing with the claims. It's just where you have to bring them or ask to be allowed to bring them. It is not a defense to the claims. It does not affect the claim itself. So you keep saying that. The claim is out there. It's just what court gets to hear it. I think... Well, I appreciate that point, Your Honor, but my view would be that under the authority that exists, it's improper to initiate a lawsuit under a particular claim without obtaining court approval. And I do think... And what's the harm? I mean, really, what is the issue here? Because you're not arguing that it has to be brought into bankruptcy court in a case that has been dismissed, correct? I'm not arguing that, correct. So it has to be brought somewhere. Where else could it be brought besides the state court? Well, it would be brought into state court after having obtained approval as it was necessary as a prerequisite. So let's just use hypotheticals. That's the issue here, okay? Because as I think all my colleagues are agreeing, Barton simply doesn't seem to apply to these claims. Hypothetically, if the prepetition claim existed, let's assume it does, that period would not be governed by Barton either, right? I mean, your argument cannot be that while he's not in a state representative because he hasn't been employed, he somehow was protected by Barton until after the petition is filed. Then Barton would come into effect. So for the period that she's allowed and she has said Barton approval is granted, she didn't have to, did she? If it existed, she didn't have to, right? And certainly to the extent it wasn't necessary or outside the scope, I would agree with that. But we have a motion here that I think gives concern for what it means and I think in order that… Let me pick up Judge Gant's point because I thoroughly agree. But I think the problem here, and I'll try to be as delicate as I can, is the Court of Appeal in reading, I think, perhaps somewhat broadly, the question of melding a prepetition period and a postpetition period, conceived of a malpractice claim that basically was the estate's claim because something went wrong in the bankruptcy that disadvantaged everybody and the first effect of that is to the creditors because they have the first call on any money that would have been generated. So in many cases, it may well be that that's an estate claim. We're looking at this and wondering if that's really the case here where one, the case was dismissed. So there's nothing, I mean, there is no estate to have the benefit of any claims one way or the other. And two, as Judge Coffman seemed to intuit, although she might have spoken to it more directly, there's a big difference between something that does disadvantage all the creditors and something that disadvantages this individual who perhaps was not thoroughly advised about commencing a bankruptcy and was not competently represented in how that got off the ground. So to the extent that the Court of Appeal just assumed that that was the same harm, Judge Coffman didn't seem to agree, and frankly, many bankruptcy judges might agree with her that there's a big difference between the duties to an individual client before you file and the duties to the estate when the client becomes a fiduciary. Now, having said all that, the Court of Appeal did what they did. So, I mean, the question, and frankly, the problem, and I'm not trying to beat this to death, is you didn't raise any of this in the papers, okay? I mean, you talk about retroactivity because you claimed there was no subject matter jurisdiction. That is clearly wrong. So we're struggling with what to do with this thing, given the two arguments you made, retroactivity, which I think there's no controlling case that says retroactivity is impossible, and two, this particular weird case seems to be the case where subject matter jurisdiction was there. So, I mean, I'm struggling with what to do with this. All that having been said, you got a great ruling from the Court of Appeal, even if it might have been not the one a bankruptcy judge would have come to. So, I mean, I'm sorry. I'm leaving you extra two minutes, and maybe that's something you want to think about, and tell us what you think we can do here to try to help everybody out because I think we're all at a loss, okay? And I'm sorry we've interrupted you so much. We really are struggling with what to do with this thing, and I thoroughly agree with my panel mates here that this just doesn't seem to be really centered on the real issue. Thank you, Your Honor. I'll mull that over, Mr. Kivin, reserve my time. Thank you. All right. Well, Mr. Kim, let me begin with the question that I think Judge Gant was leading with, which is, look, you choose to go to state court, okay? You don't go back to Judge Kaufman and say, look, I don't think the Barton Doctrine would be implicated in the following matters. Nobody does that. You go to state court, you present one claim that spans three different periods, a pre-petition period about which the Court of Appeal has done something with which you might not agree, but I'm not sure what we can do about it, a period during which Bankruptcy Council was appointed, you know, and was acting on behalf of a producer and was themselves a producer, as to which I think you're not going to argue anymore. The Barton Doctrine wouldn't have applied to that period, and as to which there is a fiat that was approved, which has typically preclusive effect, and then this post-trustee appointment period that everybody seems to agree is neither here nor there. But having said all that, the Court of Appeal made some rulings, or appears to have made some rulings with respect to the pre-petition portion that you might not agree with, but what, you know, why go to Judge Kaufman at that point? And what was her power to come to a different conclusion than the California Court of Appeal did? Well, Your Honor, I just want to clarify that the appeal in the state court was strictly asked to Barton only after dismissal. I'm having trouble hearing you. Can you talk more loudly or more into a microphone or something? It sounds like you're a long way away. Yes, my apologies. Can you hear me better now? Well, slightly. Okay. I will try to speak more loudly. My apologies. So I was saying the appeal in the state court is strictly asked to Barton only. The Court of Appeal decided that Barton would apply, right, as you were saying, as to the period where Mr. Rontes was counsel for the estate. The part about collateral estoppel was something that the court observed but was not part of the ruling based on what I read in the Court of Appeal's decision. And the Court of Appeal stated that we could go back to the bankruptcy court to get that approval. So we were following the directive of the Court of Appeal, and the Court of Appeal also stated that concurrently— Let me stop you. The Court of Appeal having basically ruled that the pre-petition period melded with the post-petition period up to the trustee, the Court of Appeal then tells you, but, gee, go ask the bankruptcy court if they look at this differently. You think that's what the Court of Appeal said? No, Your Honor. I believe the Court of Appeal strictly found that it was the period from the petition date up to the date of when the trustee was appointed. That's the period where Barton approval should have been obtained, and the appellee did not obtain that approval. And for that reason, the Court of Appeal stated that we could go back to the bankruptcy court to seek that approval. But then the bankruptcy—because we had argued, Your Honor, in the Barton motion that collateral estoppel would not apply, notwithstanding the fiat, based on the arguments that we had made in the papers. Judge Coffman didn't agree with that. Judge Coffman found that the decision of the Court of Appeal was the right decision, and she effectively followed what the Court of Appeal decided. But, Mr. Kim, you didn't appeal from that decision. All that we're left with are the two things she did decide, the pre-petition period and the post-appointment of the Chapter 11 trustee period. He has seemingly agreed that Barton doesn't apply to either one of those two periods. So we're not dealing with whether or not she was right about granting you Barton relief for a period that she's excluded you from being able to pursue. So you're effectively locked out, it looks like, from our perspective now, because you didn't get Barton approval for the period from the petition date to the appointment of the Chapter 11 trustee. You didn't appeal that. She didn't allow you to pursue it. So there you are. So what do we do with the pre-petition period? In other words, if we don't do anything, you didn't need Barton approval. Whether you can go forward in state court is a question the state court's going to have to decide based upon what the Court of Appeals has decided, not according to what the bankruptcy judge has decided, because that's not what controls. State law controls the property rights that the malpractice claim encompasses, not what a bankruptcy judge says. It's what the state Court of Appeals said. So aren't you just – if we – what do we do? Do we affirm her? Do we reverse her? Do we find that her decision is irrelevant because Barton isn't applicable to the periods that are in question? How do we – that's what I'm trying to figure out, what the answer is here. Yes, Your Honor, and I agree. We did not appeal the period from the petition day up to the point where the trustee was appointed. We did not appeal that. I agree with that. I think the appellants, however, were claiming that Barton approval was also necessary for the pre-petition period because it was connected with the ongoing representation by the – Mr. Robertson's law firm. And therefore, Judge Coffman should not have granted Barton approval after that period. I think that's really what we're fighting about. And as the court stated earlier, nothing in the paper is filed by the appellants. Say anything about this post-petition – not post-petition, on the post-trustee appointment period, and consistently argue that the entire case should be dismissed. So that's why we have to litigate that. But I think what the court can do, Your Honor, is that the court can say that Barton approval was not necessary for the pre-petition period. Now, let's get into that because the Court of Appeals does say that. They find that certain cases hold that when it crosses the divide between pre-petition, post-petition, it's all covered by the court. And they made the finding that that was indivisible and cannot be separated. So that's the state court. And now you go into the bankruptcy court and you get a decision. The concluding order is that you may proceed for the period of October 5th to October 10th. So Judge Lafferty's initial point, what is the prism through which we view this? Is this solely retroactive application or is this Barton doesn't apply? And if so, how do we reconcile that with what the Court of Appeals did? Well, if it's the panel's position that Barton does not apply in the pre-petition period, then I don't think the Court should make a decision on the retroactive application issue. But as Judge Lafferty said, that's not directly in front of us. And how do we address the Court of Appeals' decision? I mean we can say that, but it's really dicta, isn't it? That's the problem Judge Lafferty's getting at. She may well be right from our point of view, but it does not matter if the Court of Appeals' decision is final and we must give respect to it. Let me begin from a different place, okay? Do you take the position that the Court of Appeal lacked jurisdiction or lacked, I'll use a word we use all the time here, judicial power, to make a ruling with respect to the pre-petition portion of the representation? Because they clearly took that up in a much more nuanced way than the trial court did. So the Court of Appeal did break this into three pieces, but they seemed to conclude that because of their reading of the Barton Doctrine and the way that these kinds of claims kind of hang together, for lack of a better word, that in this case the pre-petition period really is inextricably intertwined with the post-petition period. Now, I'm not sure I would have come to that conclusion, but I think they did. So if you think they didn't come to that conclusion, okay, you can tell me that. If you think they lacked the power to do that, you can tell me that. If you think you could otherwise collaterally attack it, you can tell me that. But that's what we're trying to figure out what to do with that. Yes, Your Honor. I think the Court of Appeal basically just kicked down that issue for the bankruptcy court to decide because the Court of Appeal stated that in addition to my client being able to file her amended complaint, that the door was wide open for the litigant, my client, to go back to the bankruptcy court so that the federal court could decide that very issue, Your Honor. Then why did they decide? I'm sorry? I'm sorry. I didn't get the question. Why did they decide the issue of the effect of the pre-petition representation? Because, I mean, the way I read it was you can go forward post-trustee appointment. That's it. And even as to that, you may have a standing problem. Well, again, Your Honor, maybe I'm not directly properly addressing the Court's question, but I believe the Court of Appeal decided that it would be up to the bankruptcy court, the federal court, to decide whether Barton applied and to what period. I mean, it's in their opinion that it potentially applied to these periods, meaning the petition date, the trustee appointment date, and maybe the pre-petition date. I mean, I don't recall the Court of Appeal saying that the pre-petition period also needed the bank's part in approval, but perhaps it did. Counselor, I'm intrigued by your position that there's something in there that refers to it. I'm looking at the disposition of the Court of Appeal's decision. It says the judgment of the Superior Court is reversed. On remand, the Superior Court is directed to grant acting for leave to amend her complaint to state any claims based solely on Arante's conduct during the period she was a debtor out of possession and, if she can, to allege facts sufficient to establish standing for such claims. That seems pretty dispositive that pre is out and debtor in position is out and essentially affirming the court as to its dismissal. So where in that is the invitation to go to the bankruptcy court? And if there's a specific part that you're referring to, I'd appreciate if you could help us to that point, Art. Yes, Your Honor. There is a specific language that the Court of Appeal uses, which says that nothing prevents the debtor from seeking Barton approval. Also in Excerpts of Records, Volume 2, 267. Hold on a minute. But the awkwardness is you haven't done that. And the Court of Appeal is faced with the question of how to interpret the Barton Doctrine, which they may not do every day, but there's no indication that they're without power to do so, and they did it. Okay, they did it. They made a determination. So what do we do with that? I'm sorry, Your Honor. Made a determination as to the preposition period. With respect to the five or six or seven days prior to the commencement of the bankruptcy case. They clearly made a determination about that. Well, I think the Court also stated that we could go back to the bankruptcy court, though, however, Your Honor. And it's cited in my brief. Well, I mean, if their direction was go ask the bankruptcy court for approval, why did they bother to decide the question in front of them, which is what is the effect, where does this preposition period fit? Because they directly answered that question. Well, because the deferral, Your Honor, was based on the failure to obtain Barton approval in the first place, and I think the California Court of Appeal decided that it needed to address what situation. And, by the way, let me tell you, I'm not suggesting that, I mean, I'll say this delicately. I'm not suggesting that we would have agreed with their analysis of the preposition portion. Clearly, Judge Kaufman didn't. But the question is, why does Judge Kaufman get to entertain that question at all? If the California Court of Appeal has gone out of their way to decide it, because it just looks like they did. So how about to the extent that the Court of Appeals determined the question, that the prepetition period is encompassed within the postpetition prior to the appointment of the Chapter 11 trustee, Barton approval was required. She granted it. We have to deal with that. To the extent that they were wrong to address the question, because Barton approval wasn't required for that period, then her decision becomes superfluous. Right. It doesn't matter. But I don't know, what we're not sure about is to what extent we can say something that is contrary to what the Court of Appeal and California has already ruled. You're bound to go back to the state court and argue whatever you want to argue, but it isn't going to be something that we're going to tell them. We're trying not to tell them that they are either wrong about how you look at bankruptcy malpractice claims. We're not going to instruct a state court, not a court of appeal, about their own state law and how it applies. So that's where we're kind of confounded and confronted with a problem here. Well, perhaps what the court could do then is reverse the decision of the bankruptcy court, stating that Barton was not even required after the prepetition part of the claim or the post-Chapter 11 trustee appointment of the complaint and perhaps deal with it that way. I know I'm out of time. I mean, that would leave you in the same position of we dispose of it as a bankruptcy matter. You go back to the state court, and the state court says, you know, the guys who grade our papers have already told us that, I'm sorry, that the prepetition period is off the table. So good luck with that argument in the California Superior Court. I'm sorry. I'm not sure over time, but this is an important point, at least in my thinking. I'm struck with one of the possibilities being this is really just a question of timing, right? You're reading the appellate decision as suggesting you could go back, and you did. And taking that vein, you got approval from the bankruptcy court to proceed. So there's at least one possibility that, again, the claim is out there to the extent that it is. Now you have leave from the bankruptcy court to proceed. The question is how you proceed. You are saying, well, this is retroactive, and the state court can apply it, so we're good because we already alleged it. Time is set when we agree. That's for the state court, though. I mean, really, in one view, both can be right. You didn't get Barton, and the appellate court has said you had to. Therefore, it was properly dismissed. You have now gotten Barton, and you may proceed. And it is for the state court to decide how that wants to proceed, whether it was within the existing action, whether you need to file a motion to amend to go through the dance to bring it back in because it was barred under Barton, or whether you have to file a separate new action to proceed. But, I mean, how do you respond to Judge Kaufman's decision? And it gets back to, again, the retroactive application of this. Are you insisting that this is retroactively applied and binding on the California court? Or is this just leave for you now to proceed? I think the position that we would take, Your Honor, is that Judge Kaufman applied Barton retroactively, that she had the discretion to do so, and that the state court is bound by Judge Kaufman's decision. Well, it's bound by Judge Kaufman's decision that it is allowable. The question is, when is it allowable in light of the existing action for the pre-petition conduct? And what in Judge Kaufman's decision says that it's retroactive? Well, she approved the pre-petition period under Barton, and the complaint has already been filed. And that may be prospective, right? Because the California Court of Appeals said it didn't happen free. Yeah. Okay. I think we might need to close that. Okay. Mr. Simone? Thank you, Your Honor. To briefly address a few points, one, you know, I think it's sort of an overreach to say that the court of appeal was directing the filing of a Barton motion. I think the language that counsel's referencing came in response to an argument that had been made that the bankruptcy had already been dismissed, therefore it wasn't necessary to seek Barton approval, and the court of appeal was saying, no, you could reopen. You could still have even done that today. But its ruling was what it was. I would also disagree that that was all that the court of appeal was addressing. It also did address, I think, separately the res judicata argument, which I think is reflected in its ultimate instruction to the superior court. I do think that one of the concerns that my clients have, the appellate's position is that the way that Judge Kaufman's order is framed, such as authority to continue prosecuting this case, does seem to retroactively approve these claims that, from our perspective, were kind of out of this lawsuit after what the court of appeal had said. And that's where I think the retroactivity and the timing issues come into play. If Judge Kaufman is granting Barton approval now to claims that had already been dismissed pursuant to the court of appeal opinion, my view would be that there wasn't subject matter jurisdiction for those claims at the outset, and they would have to be filed as a separate lawsuit at this point, not that they could just be tacked onto the same lawsuit where they're going to relate back. I think, as Judge Spraker said, there are timing issues that arise from that, I think, from the confusion here. Right. I mean, the problem is two different views of whether Barton applied at all. I mean, from Kaufman's perspective, it doesn't apply pre-petition. California court of appeals, well, of course it does because it's intertwined. So, I mean, I think that makes it more difficult to take the subject matter jurisdiction argument as game over, in my view. Why don't we give you another minute or so, because we've pestered poor Mr. Kim at length. But if you want to wrap up over the next minute, and then I'm going to have some comments at the end, OK?  So, with that in mind, you know, our view would be that I would agree that the court of appeals opinion, in my mind, this Barton motion was unnecessary. I think they gave plaintiff instruction about how she should proceed, how she could proceed, and we felt it was necessary to therefore oppose this motion and appeal the result, because the concern we have is the confusion that results from the current procedural posture. You know, there's claims that have been dismissed that maybe are revived, that the trial court's not going to know what to do with all this, and whether it's retroactively revived in a way that I would say is inappropriate under the authority and how the Barton doctrine applies. So, for that reason, we think the ruling should be reversed, and I would ask the court to do so. OK. Unless my colleagues have a further question, I have one follow-up comment. Go ahead. OK. So, now the time has stopped. I'm just going to... I want to urge the two of you, you know, maybe because your fellow panelists don't say this very often, this is a really concerning appeal, because as you can tell, we're not sure how things are lining up here. We're not sure what is separate or what. There are decisions that both parties made that make it difficult for us to put into proper context what Judge Kaufman did, and the only things we're being asked to review are the retroactivity of it and the standing. With respect to which, you know, we can decide that, I'm not sure it's ultimately going to be as helpful as you might all want it to be, because it may leave unanswered a very large question about what happens next, and if we try to answer that question, you know, I would think that if we try to answer that question, it will be helpful, but I can't guarantee from your perspective it will be. So having said all that, can I urge you guys to settle this? I mean, we're talking about what doesn't seem to be really at stake here is whether there were a Barton Doctrine application to the post-trustee appointment. I'm not sure what that claim is worth, and you guys have a better idea of it, and then there is a highly debatable, and not even sure how we get to it, question of the five or six days before the bankruptcy was filed, and there are just vastly different views from two different courts about how to think about that, and all I can suggest to you is I'm fairly confident that whatever we do here will be just a signpost along the way to a very long and very, at this point, inconclusively predictable fight in terms of what's really at stake here and what you're really arguing about, because what you're arguing about doesn't seem to us to be the essence of what the problem is. And I say that with all the respect I can give. I mean, you've made serious arguments about issues that we don't think really determine the ultimate disposition of this. So let me just suggest to you we'll take it under submission at this point. I urge you, I urge you to think about settlement here, because no matter what we do, and I'm not trying to be funny or flip, it's just not going to be the last word, because of the way this doesn't quite line up. So I urge you guys to think about settlement. We'll take it under submission. If you want to let us know that those conversations are underway, I would say sooner rather than later. You can do so, and we will try to not do anything that would jeopardize those conversations. But, I mean, this is one of those situations where there's just so much yet to happen no matter what we do. But I think you're both really, really well served in thinking about exposing this as consensually as you possibly can. So thank you for listening to that little speech. It's not one you hear very often at this court, but I think that this appeal just presents a truly unique situation. So with that. Well, I was just going to add to what Judge Lafferty said, and that is just if you want us to hold this for some time, let us know that you're talking. When you're done talking and you don't want us to issue something, let us know and we'll decide. But we're not looking to try to write something unless you make us, if you think you can resolve it. But we aren't also going to just hold it forever with the hope that someday you'll decide that it makes sense. So just give us some indication and we'll follow your lead. You're hearing what our sort of disconnectedness is here. That's where all this is coming from. It's not that we can't decide it. It's that if we decide it, is it really going to help anything? That's the problem, okay? So we'll take it under submission. If we hear from you, we're willing to, within reason, hold it while you try to work something out. But otherwise, we will get you a written decision as soon as we can. And look, all of our questions notwithstanding, thank you for your very good arguments. I think this is a truly, truly complicated matter for which there were no easy answers. So thanks to both of you. And if we were a little aggressive in our questioning, it's because we're really trying to figure out what the right thing to do here is. Thanks to both of you. It's nice to see you, as always. Thank you. Thank you. Okay, thank you. And with that, I think, Madam Clerk, we're adjourned? Court is adjourned. Okay, thank you very much.
judges: Lafferty, Spraker, Gan